IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KAREN C.**[1], <br><br>        Plaintiff, <br><br>    v. <br><br> **ANDREW M. SAUL,** Commissioner of Social Security, <br><br>        Defendant. | Case No. 6:19-cv-1138-SI <br><br> **OPINION AND ORDER** |

John E. Haapala, Jr., LAW OFFICE OF JOHN E. HAAPALA, JR., 401 East 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Karen C. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her application for disability

---

      [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

insurance benefits ("DIB"). Plaintiff argues that the ALJ committed harmful legal errors in deciding her case and that the Court should remand for calculation of benefits. The Commissioner responds that the ALJ committed no legal error. For the reasons stated below, the Court remands for a finding of disability and the immediate calculation and payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB in February 2016. AR 166. She first alleged a disability onset date of May 1, 2014 but later amended the onset date to January 1, 2016 at the administrative hearing. *Id.*, AR 15. Plaintiff was born on February 15, 1962 and was 53 years old as of the alleged disability onset. *Id.* The agency denied her claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 88, 102, 115. Plaintiff appeared for a hearing before an Administrative Law Judge ("ALJ") in May 2018. AR 34-76. On August 15, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 12-28. Plaintiff requested review of the hearing decision, which the Appeals Council denied in May 2019. AR 1. Accordingly, the ALJ's decision became the final decision of the agency. Plaintiff seeks judicial review of the agency's final decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

    1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act ("Act") through December 31, 2021 and proceeded to the sequential analysis. AR 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of January 1, 2016. AR 18. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: history of endometrial cancer, digestive disorder with gastro esophageal reflux disease and abdominal pain, and spine disorder. *Id.* But at step three, the ALJ found that none of Plaintiff's impairments met or equaled the severity of a listed impairment. AR 20. Between step three and step four, the ALJ formulated Plaintiff's RFC. The ALJ determined that Plaintiff could "perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can only occasionally stoop (bend at waist) and crawl." *Id.* At step four, the ALJ found that Plaintiff could perform her past relevant work as a supervisor cashier. AR 25. In the alternative, at step five the ALJ found that "there are other jobs that exist

in significant numbers in the national economy that [Plaintiff] also can perform." AR 26. Thus, the ALJ concluded that Plaintiff is not disabled.

## DISCUSSION

The Court identifies the ALJ's material legal errors and then explains why remand for immediate payment of benefits is appropriate.

### A. "Credit-as-True" Framework

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* Said otherwise,

PAGE 6 – OPINION AND ORDER

> the district court must consider the testimony or opinion that the
> ALJ improperly rejected, *in the context of the otherwise undisputed
> record*, and determine whether the ALJ would necessarily have to
> conclude that the claimant were disabled if that testimony or
> opinion were deemed true.

*Id.* (emphasis added). If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and need not credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

## B. Analysis

### 1. The ALJ Committed Harmful Legal Error

#### a. The ALJ Improperly Rejected Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

PAGE 7 – OPINION AND ORDER

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff testified to her significant physical limitations at the administrative hearing. Plaintiff suffered from cancer and is now in remission, but the treatment caused her to develop fecal incontinence for which she uses a colostomy bag. The colostomy bag attaches to her small intestine and collects feces. Since she got the colostomy bag in November 2015, she has had four surgeries to fix problems with the colostomy bag. Her stoma—the attachment point for the colostomy bag—is on the left side of her body. She reported "constant pain" around her stoma and had to have the stoma relocated because she developed a hernia at the original site. AR 53. She also reported that "it hurts all the time" on the right side of her body in the lower intestine area. AR 54. She cannot take narcotics to relief her pain because they cause severe constipation. *Id.*

Plaintiff vividly recounted her daily suffering:

> I can't stand for very long; it hurts. I can't sit for very long; it hurts. Sleeping hurts. It's just -- it's all there. The pain is just there 24/7. I can't stop it.

AR 56. She described the pain as "sharp," "burning," and "like somebody's taking a sharp knife and just slicing across there." AR 57. The pain in the right and left sides of her stomach is so bad

PAGE 9 – OPINION AND ORDER

that it prevents her from sleeping at night. *Id.* She tried to continue working after her surgeries but began to miss work because of the pain. AR 55. Her pain is such that even lifting a gallon of milk hurts her, AR 55, and she can stand comfortably for only 10-15 minutes at one time, AR 56. She also reported that she can sit comfortably for only 10 minutes at a time. AR 60.

Plaintiff's colostomy bag makes it difficult for her to work in other ways. She testified that she has had to leave work early many times because the colostomy bag "just blows." AR 58. To avoid that, she must empty the colostomy bag four to five times a day, a procedure that takes "about 20 minutes" each time. She cannot "go to the bathroom like a normal person." AR 58. Despite her best efforts to keep her colostomy bag clean, she has suffered from blockages and infections that cause her to spend several hours in the bathroom. AR 59. Most recently she tested positive for a C. Diff. infection. AR 627. The colostomy bag also limits her ability to bend, squat, and kneel. AR 212.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," thus satisfying step one of the framework. AR 22. But the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ gave three reasons for rejecting Plaintiff's subjective symptom testimony: (1) that Plaintiff's "physical/exertional activities" are "inconsistent with [Plaintiff's] allegations of debilitating symptoms and physical limitations," AR 23, (2) that "the overall medical record . . . does not support the degree of disabling severity alleged," *id,* and Plaintiff's "conservative care on medications," AR 24.  The Court considers whether these are "clear and convincing" reasons to reject Plaintiff's subjective symptom testimony.

### i. Activities of Daily Living ("ADLs")

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

PAGE 11 – OPINION AND ORDER

The ALJ found that Plaintiff's "reported daily functioning and other activities are inconsistent with allegations of more limiting symptoms." AR 23. The ALJ noted that Plaintiff continued to be able to fix her own meals, care for two small dogs, and complete household chores. AR 24. The ALJ also found that Plaintiff could get out of the house daily, travel independently, shop with the use of a cart, attend medical appointments, manage money, and spend time with her family. *Id.* The ALJ observed that Plaintiff continued to work part time after the alleged disability onset date and injured herself "working on a washing machine." *Id.*

The ALJ's recitation of Plaintiff's ADLs is not a clear and convincing reason to reject Plaintiff's subjective symptom testimony for two reasons: (1) the ALJ did not identify any actual inconsistencies and (2) the ALJ broadly discredited Plaintiff's "allegations of debilitating symptoms and physical limitations," AR 23, but did not "specifically identify the testimony [he] found not to be credible," *Holohan*, 246 F.3d at 1208.

The "minimal activities" identified by the ALJ do not contradict Plaintiff's allegation of disability, nor do they meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639. Plaintiff did not purport to be completely unable to perform these basic activities, and therefore her testimony did not contradict her ADLs. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); cf. *Molina*, 674 F.3d at 1113 (noting a contradiction when claimant testified that he was completely debilitated but reported engaging in daily activities). Plaintiff did testify that she could only perform most activities with significant assistance, and even then, only with great difficulty. Plaintiff showers and grooms herself—but because of her colostomy bag, what would take an average person 15 minutes took her an hour and 15 minutes. AR 65. Plaintiff tries to shop—but her daughter must take her to the grocery store and she needs a motorized cart. AR 63. Plaintiff cooks—but only in the sense that she "throw[s] something in the microwave,"

because the amount of standing required for anything more involved hurts too much. AR 62. Plaintiff tried to work part-time—but she had to stop because the pain was "too hard on [her] body," AR 55, and had to "go home so many times" because her colostomy bad would "just blow," AR 58. Plaintiff did what was expected of her: she tried. That is not a reason to discredit her testimony. *See Lingenfelter*, 504 F.3d at 1036-38 (holding that ALJ improperly rejected symptom testimony when claimant tried to work for nine weeks but failed due to his impairments).

Even if Plaintiff's ADLs were enough to discredit her subjective testimony, the ALJ did not identify which portions of Plaintiff's testimony it would discredit with sufficient specificity. *See Smolen*, 80 F.3d at 1284 ("[t]he ALJ must state specifically *which symptom testimony is not credible* and what facts in the record lead to that conclusion.") (emphasis added). The ALJ did not specify whether he was discrediting Plaintiff's testimony about her pain, Plaintiff's testimony about the practical difficulties with her colostomy bag, or both. For example, none of the ALJ's reasoning addresses Plaintiff's testimony that she had to take four or five 20-minute breaks a day to empty her colostomy bag, or that she had to leave work early when her colostomy bag would overflow.

### ii. Objective Medical Evidence and Conservative Treatment

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony only because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner will not "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your

symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3).

"[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722. Here, the ALJ found that "[T]he overall medical record, including physical examination studies, and treatment/progress notes, reflects generally only mild abnormalities and conservative treatment, and does not support the degree of disability alleged." AR 22. Besides improperly finding that lack of support in the medical record can discredit Plaintiff's "testimony as to the severity of symptoms," that interpretation of the objective medical record and Plaintiff's treatment history is unsupported by substantial evidence. *Reddick*, 157 F.3d at 722. The ALJ merely recited the portions of the medical evidence that supported his interpretation while ignoring that overwhelming record evidence that supported Plaintiff's subjective symptom testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015) (holding that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.").

That evidence is overwhelming. Plaintiff's treating doctor diagnosed rectal prolapse and noted wound edge ischemia of Plaintiff's stoma soon after Plaintiff first had it sited int December 2015. Plaintiff continued to have trouble with her stoma throughout early 2016, leading to an emergency room visit in June for severe pain and bleeding around the stoma. AR 382. The bleeding and pain continued through the rest of 2016, and Plaintiff's treating doctor diagnosed "colostomy malfunction" and "significant" parastomal hernia. AR 685, 427. Plaintiff underwent two more surgeries in 2017 to re-site the stoma and fix her hernia, but Plaintiff continued to suffer from "severe" abdominal wall pain and "significant abdominal distension." AR 636. Her treating physician reported in December 2017 that she was "clearly in pain and miserable." AR 639. Most recently, in January 2018, the same physician observed that "[s]he is still having severe abdominal pain, and significant abdominal distension." AR 627. The medical record also contradicts the ALJ's characterization of Plaintiff's "conservative care on medications." AR 24. That is especially true because Plaintiff had a "good reason" for refraining from taking more narcotics medications—they cause her constipation and worsen her already significant bowel problems. *Fair*, 885 F.2d at 603.

The ALJ's analysis of the objective medical record is unpersuasive. The ALJ wrote that a November 2015 rectum protectomy showing "benign colorectal tissue with no pathological abnormalities" conflicted with Plaintiff's testimony about her severe impairments. AR 22. That procedure revealed only that Plaintiff's cancer was in remission. The ALJ did not, and could not, explain how the success of Plaintiff's cancer treatment detracted from her testimony that she suffered side effects of pain and fecal incontinence from that treatment. The ALJ also noted that in February 2017, a surgeon observed that Plaintiff's stoma was "functioning well." *Id.* The ALJ omitted the timing of this observation—it was made right after Plaintiff underwent surgery to re-

site her stoma, after three surgeries that failed to repair her stoma in its previous location. AR 436-37. Plaintiff's stoma may have been "functioning well" right after surgery and more than a week of inpatient hospital care. But that is not inconsistent with Plaintiff's testimony that it eventually began to malfunction and cause her severe pain.

### b. The ALJ Improperly Discounted the Medical Source Opinion of Dr. Bascom

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan*, 246 F.3d at 1202. If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at

1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Dr. Bascom is a surgeon and one of Plaintiff's treating physicians. He performed multiple surgeries on Plaintiff and has seen her regularly since 2015. In an April 2018 functional evaluation, Dr. Bascom opined that Plaintiff suffered from fecal incontinence and chronic pain. AR 691. He described Plaintiff's overall prognosis as "poor." *Id.* He translated these findings into functional limitations. In Dr. Bascom's opinion, Plaintiff could stand and walk for at most about two hours each day. AR 692. He limited her to lifting and carrying ten pounds frequently and occasionally, and rarely lifting 20 pounds. She would need a job that permitted her to shift

positions at will. *Id.* Plaintiff would also need to take unscheduled breaks, the frequency and duration of which would depend on her intestinal activity. *Id.* Dr. Bascom wrote that Plaintiff's symptoms would cause her to be "off task" more than 25 percent of the time and would cause her to miss more than four days of work each month. AR 694. The ALJ gave Dr. Bascom's opinion only "partial weight" because he wrote "unknown" in some fields of the functional evaluation, which to the ALJ rendered Dr. Bascom's opinion "speculative in light of the missing information."[3] AR 25. Dr. Bascom is a treating source, the question is whether the ALJ provided at least "specific and legitimate" reasons to discount Dr. Bascom's opinion. *Ryan*, 521 F.3d at 1198.

The ALJ did not explain why Dr. Bascom's refusal to speculate on some parts of the functional evaluation made his other answers more speculative. Dr. Bascom wrote that he did not know how many city blocks Plaintiff could walk without rest or severe pain, whether she needed periods of walking around during an eight-hour work day, how often she would need to take unscheduled breaks, and whether Plaintiff had significant limitations with reaching, handling, or fingering. AR 692-93. The Ninth Circuit has held that ALJs may reject check-box evaluations from medical sources when they "[do] not contain any explanations of the bases of their conclusions." *Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996). Dr. Bascom explained that he did not know how frequently and for how long Plaintiff would require breaks because Plaintiff's "pain flares at times [and] is related to intestinal activity." AR 692. Dr. Bascom did not speculate, and he provided a sensible explanation for both not speculating and his ultimate

---

[3] The ALJ also discounted Dr. Bascom's medical opinion because Plaintiff's "demonstrated functioning limits the overall weight given to the treating source opinion." AR 25. That is not a "specific and legitimate" reason to reject Dr. Bascom's opinion for the same reason is not a "clear and convincing" reason to discount Plaintiff's subjective symptom testimony, as discussed above.

conclusion. Dr. Bascom's opinion was "based on significant experience . . . and supported by numerous records." *Garrison*, 759 F.3d at 1013. That Dr. Bascom did not now whether Plaintiff had significant handling limitations is irrelevant. Plaintiff did not allege any such limitations; her claim for disability is based on chronic pain, not handling or fingering limitations. Given the nature of Plaintiff's disability claim, the ALJ did not provide "specific and legitimate" reasons to reject Dr. Bascom's medical source opinion.

### 2. The Record is Fully Developed and Free from Conflicts and Ambiguities

As discussed above, the Court finds that there are no conflicts among Plaintiff's subjective symptom testimony, Plaintiff's ADLs, and the objective medical record. The Court also finds that Dr. Bascom's medical source opinion is consistent with the record for the reasons discussed above. The Commissioner argues that Plaintiff "cannot establish the rare circumstances necessary for a deviation from the ordinary remand rule, making a finding of disability inappropriate." ECF 11 at 5. But the Commissioner focuses on Plaintiff's subjective symptom testimony and Dr. Bascom's medical source opinion and identifies no "outstanding issues on which furthers proceedings in the administrative court would be useful." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Court has reviewed the other evidence the ALJ considered and finds no significant conflicts or ambiguities therein.

### 3. The Record Requires a Finding of Disability

A finding of disability is required when the Court credits Plaintiff's improperly rejected subjective symptom testimony and the improperly rejected medical opinion of Dr. Bascom. Plaintiff testified that she needed to take four to five 20-minute breaks each day to use the bathroom and clean her stoma. Dr. Bascom opined that Plaintiff would miss more than four days of work each month. At the administrative hearing, the Vocational Expert (VE) testified that somebody with either of these limitations would be unable to maintain full-time employment.

*See* AR 69-70. ("Four or more days per month would rule out all work at all skill levels;" taking only two unexcused breaks lasting 20 minutes each "would rule out unskilled work").

### 4. There Is No Serious Doubt as to Plaintiff's Disability

The Commissioner, however, argues that the record creates serious doubt that Plaintiff is in fact disabled. *See Garrison*, 759 F.3d at 1021. "Serious doubt" may exist when "the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled," even if the ALJ did not consider that evidence at the hearing. *Dominguez*, 808 F.3d at 407 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)). Nothing in the ALJ's opinion or the medical record raises serious doubt that Plaintiff is disabled. And the Commissioner points to no evidence that the ALJ overlooked.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 16th day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge